***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury.
4. It is stipulated that an employer/employee relationship existed between the parties at the time of the alleged May 2, 2007 accident.
5. The employer in this case is UNC and is self-insured. Defendant's third party administrator on the date of the alleged injury was Key Risk Management. Defendant now has Corvel as its third party administrator.
6. The employee sustained an accident on or about May 2, 2007, resulting in an alleged injury to his left foot.
7. The employee's average weekly wage at the time of his May 2, 2007 accident was $738.17 which leads to a compensation rate of $492.13.
8. The employee was paid the entire day of his May 2, 2007 accident.
9. The employee stopped working for UNC on March 18, 2008, and returned to work on January 4, 2010.
10. The record consists of Stipulated Exhibits 1 and 2 and the deposition transcripts of Dr. Hardy Singh and Dr. Mark Easley.
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Deluca's August 25, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES *Page 3 
1. If this claim is found to be compensable, is defendant entitled to a credit for any short term disability, long term disability, or medical compensation?
2. Is plaintiff's claim for benefits for his left foot condition time barred by the Statute of Limitations under N.C. Workers' Compensation Act?
3. Is plaintiff's osteochondral defect condition related to a compensable injury by accident on May 2, 2007?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commission, plaintiff was forty-two years old with a date of birth of July 7, 1967. Plaintiff is a high school graduate and has completed some college coursework.
2. Plaintiff began working with defendant-employer in August of 2000 as a Maintenance Mechanic III, the position he has occupied at all times relevant to this case.
3. In his position of Maintenance Mechanic III, plaintiff worked a ten-hour shift four days per week.
4. The position of Maintenance Mechanic III required plaintiff to take care of any interior structure in the buildings that he serviced, including maintenance and repair. The physical demands of the position required plaintiff to lift up to fifty (50) pounds, be on his feet for the majority of his shift, as well as work on ladders for a significant part of his shift.
5. In 2003, plaintiff was diagnosed with a left foot condition called osteochondral defect, or OCD. OCD occurs when the cartilage between the bones is gone, there is bone *Page 4 
touching bone, and additional damage to the bone has resulted from the bone rubbing. Plaintiff has also treated for gout related to his feet.
6. In October of 2004, plaintiff injured his left ankle when he fell attempting to secure a large door while working for defendant-employer. Defendant denied plaintiff's claim for benefits filed under IC File No. 480856. Plaintiff underwent treatment on his own with Dr. Creighton, who performed arthroscopic surgery for an osteochondral lesion of the talus in the left ankle in November of 2004.
7. Following this procedure Dr. Creighton released plaintiff to return to work full-duty, and plaintiff returned to the regular duties of his Maintenance Mechanic III position in January of 2005, experiencing just occasional aching and swelling in his left foot/ankle.
8. Plaintiff continued working in this position, and on May 2, 2007, he twisted his left ankle when he stepped on a piece of construction debris while carrying ceiling tile in one hand and a ladder in the other.
9. Plaintiff immediately reported his injury to his supervisor, and an incident report was completed. Plaintiff was evaluated at the Occupational Health Clinic where he was diagnosed with a twisting of his ankle. No acute fracture was noted, and he was to return to the clinic on May 4, 2007.
10. Plaintiff returned to UNC Occupational Health on May 4, 2007, where his diagnosis was listed as a left ankle sprain. Medical records reflect that plaintiff was much better, that his ankle swelling had decreased, and that his gait was normal. Plaintiff was given work restrictions for a week.
11. Plaintiff continued working in his Maintenance Mechanic III position following his injury of May 2, 2007; however, plaintiff gradually began experiencing stabbing pains in his left *Page 5 
foot which progressively became worse to the point where he could not put any weight on his left ankle. Plaintiff testified that the pain in his left ankle following his May 2, 2007 injury was much worse than the symptoms he had experienced following his 2004 injury. The Full Commission finds this testimony to be credible and accepts the same as fact.
12. As plaintiff's symptoms continued to worsen, he was evaluated by Dr. Creighton at UNC Occupational Health Clinic on February 22, 2008. Dr. Creighton noted plaintiff had increased pain in his left foot when climbing ladders and walking on uneven surfaces and thus recommended orthotics for plaintiff. No MRI was recommended at this evaluation.
13. Plaintiff underwent a second opinion evaluation with Dr. Hardy Singh of Southeastern Orthopedics on February 25, 2008. Dr. Singh diagnosed plaintiff with the "possibility of having a cartilaginous lesion of his ankle joint" and recommended plaintiff undergo an MRI.
14. Plaintiff underwent the recommended MRI which revealed a significant osteochondral defect.
15. Based upon the results of the MRI on March 17, 2008, Dr. Singh recommended that plaintiff proceed with an osteochondral autologous transfer surgery (OATS). He referred plaintiff to another facility for this procedure as he no longer performed it.
16. Dr. Singh testified to an opinion herein deemed credible and accepted as fact, that if plaintiff did not undergo the OATS procedure, Dr. Singh did not think plaintiff would have been able to continue working in a full-duty capacity.
17. Dr Singh further testified to an opinion herein deemed credible and accepted as fact, that plaintiff's May 2, 2007 twisting of his ankle exacerbated/aggravated his underlying left ankle condition. *Page 6 
18. As of March 18, 2008, plaintiff was unable to continue working in his position with defendant-employer due to the pain in his left ankle.
19. On March 20, 2008, plaintiff returned to UNC Occupational Health at the direction of his attorney and wanted to discuss workers' compensation covering his left ankle injury.
20. Plaintiff returned to see Dr. Singh on April 7, 2008, and had an injection while considering the treatment options presented to him previously. Dr. Singh referred plaintiff to Dr. Mark Easley for a surgical consultation.
21. Dr. Easley, a board certified orthopedic surgeon, first saw plaintiff on June 17, 2008. Plaintiff gave a history of a 2004 arthroscopy with Dr. Creighton and a twisting injury in May 2007. Dr. Easley diagnosed an osteochondral defect of the left medial talor dome. Dr. Easley confirmed his diagnosis with a CT scan and the MRI from Dr. Singh. Dr. Easley proceeded with the search for a suitable cadaver bone to complete a surgical procedure to replace plaintiff's damaged bone in his left ankle.
22. On July 7, 2008, plaintiff returned to Dr. Easley and reported an auto accident. He stated that he was recovering from his accident and he needed to delay treatment for approximately six weeks. The surgery was also delayed by the search for a suitable cadaver bone.
23. Plaintiff returned to Dr. Easley on August 26, 2008, and plaintiff elected to proceed with surgery. Plaintiff returned again on September 25, 2008.
24. On October 2, 2008, plaintiff reported for a left medial maileolar osteotomy with Dr. Easley. On November 26, 2008, plaintiff returned to see Dr. Easley for follow up and on February 18, 2009, returned for a preoperative appointment. *Page 7 
25. On February 23, 2009, Dr. Easley performed a left ankle osteochondral lesion allograft of the talus using a cadaver bone.
26. Plaintiff treated conservatively with Dr. Easley following his February 23, 2009 surgery. Following the surgery, Dr. Easley restricted plaintiff from weight-bearing on his left leg. As time progressed, Dr. Easley began allowing plaintiff to ambulate with the use of crutches, and then to take part in low impact exercises.
27. On November 24, 2009, Dr. Easley noted plaintiff was functioning well and was eager to return to work.
28. Dr. Easley testified to an opinion herein deemed credible and accepted as fact, that plaintiff had a pre-existing left ankle condition which had improved until the inciting event, the May 2, 2007 twisting injury, and that injury aggravated plaintiff's pre-existing left ankle condition.
29. Regarding plaintiff's ability to work at the time he first evaluated him in June of 2008, until the allograft procedure which was performed, Dr. Easley testified that he did not believe plaintiff would be able to work at full-duty, 10 hours per day, which plaintiff's pre-injury position required.
30. Dr. Easley further testified to an opinion herein deemed credible and accepted as fact, that the surgery which he performed was the only surgical option plaintiff had at that point due to the extent of the damage to his talus, and due to the fact that plaintiff had failed to improve with conservative treatment. Dr. Easley did not believe a repeat of the arthroscopic surgery done by Dr. Creighton would remedy plaintiff's condition.
31. On January 4, 2010, plaintiff returned to work for defendant-employer in his pre-injury position of Maintenance Mechanic III. Dr. Easley testified to an opinion herein deemed credible and accepted as fact, that it was "absolutely" reasonable for plaintiff to not return to *Page 8 
work with defendant-employer in his pre-injury position from the date of his surgery until January 4, 2010, and that he felt much more comfortable with plaintiff waiting until the date he did to return to work.
32. Plaintiff was last seen by Dr. Easley on February 23, 2010. Dr. Easley indicated plaintiff had done remarkably well and is particularly pleased with the procedure. Dr. Easley testified that he would like to evaluate plaintiff periodically due to the complexity of the surgery in transferring cartilage and bone from a cadaver to plaintiff.
33. Although Dr. Easley indicated he would address plaintiff's permanent partial disability rating to his left foot on the February 23, 2010 evaluation, it was not addressed at that time.
34. During the time plaintiff was unable to work in his pre-injury position with defendant-employer, he was paid short term disability benefits from approximately April 2008 until July 2009, through defendant's wholly funded program. Plaintiff also received benefits from a personal short term disability plan which he funded himself, also during this time period.
35. Plaintiff has produced sufficient evidence that he sustained an injury by accident arising out of and in the course of his employment with defendant-employer on May 2, 2007.
36. The Full Commission finds that the greater weight of the medical evidence of record indicates that plaintiff's pre-existing left ankle condition was materially aggravated for the worse by his May 2, 2007 injury by accident.
37. The Full Commission finds that the greater weight of the medical evidence of record indicates that but for plaintiff's injury by accident on May 2, 2007, he would not have required surgical treatment. *Page 9 
38. The Full Commission finds that the greater weight of the medical evidence of record indicates that plaintiff's present medical condition, and any necessary medical treatment related thereto, are causally related to plaintiff's injury by accident on May 2, 2007.
39. Defendant has appealed this matter to the Full Commission from an Opinion and Award filed by Deputy Commissioner Deluca on August 25, 2010. The August 25, 2010 Opinion and Award ordered defendant to pay compensation benefits to plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 2, 2007, plaintiff sustained an aggravation to his left ankle condition by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. There is sufficient medical evidence of record upon which to conclude that plaintiff's aggravated left ankle condition for which he seeks treatment is the direct and natural result of and causally related to his May 2, 2007 injury by accident. N.C. Gen. Stat. § 97-2(6); Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980); Holley v. ACTS,Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
3. To prove disability under the Act, an injured employee must establish that he was incapable of earning the same wages he earned at the time of his injury, at his same job or any other employment. Hilliard v. Apex Cabinet Co.,54 N.C. App. 173, 282 S.E.2d 828 (1981), rev'd on othergrounds, 305 NC 593, 290 S.E.2d 682 (1982). An employee may prove he is *Page 10 
incapable after injury of earning the same wages he earned before injury in any other employment in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but has, after a reasonable effort been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, or lack of education, to seek other employment; (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowe's ProductionDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff has met his burden. The medical evidence in this case shows plaintiff was not capable of gainful employment from March 18, 2008, until his return to work on January 4, 2010. Plaintiff was temporarily totally disabled pursuant to N.C. Gen. Stat. § 97-29 for the period of March 18, 2008, through January 4, 2010, as a result of his May 2, 2007 left ankle condition aggravation.
4. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendant provide all medical treatment, incurred or to be incurred, necessitated by the compensable May 2, 2007 left ankle condition aggravation, including the surgery performed by Dr. Mark Easley, when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
5. Plaintiff's claim for workers' compensation benefits related to his compensable left ankle condition aggravation of May 2, 2007, is not time-barred under the Workers' Compensation Act. N.C. Gen. Stat §§ 97-22; 97-24. *Page 11 
6. Defendant is entitled to a credit for short-term disability compensation paid to plaintiff during his period of disability that was paid through defendant's wholly funded program. N.C. Gen. Stat. § 97-42.
7. The Full Commission finds that this appeal was brought by the insurer and the Commission has ordered the insurer to continue payments of benefits, including compensation for medical expenses, to the injured employee and the Full Commission orders that the costs of this proceeding, including plaintiff's reasonable attorney's fee to be determined by the Commission, shall be taxed as costs. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved herein, defendants shall pay to plaintiff temporary total disability benefits from March 18, 2008, until January 4, 2010, at the plaintiff's stipulated weekly compensation rate of $492.13. This amount has accrued and shall be paid in a lump sum.
2. Defendant is entitled to a dollar for dollar credit against the accrued temporary total disability benefits owed to plaintiff for payments of short-term disability benefits only from the policy provided by defendant-employer.
3. Dr. Easley is hereby named plaintiff's treating physician for his left ankle.
4. Once a disability rating is addressed by Dr. Easley for plaintiff's left ankle, defendant shall pay to plaintiff that which he is entitled pursuant to N.C. Gen. Stat. § 97-31. *Page 12 
5. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in paragraph one (1) above, is hereby approved to be deducted from the lump sums accrued and shall be paid directly to plaintiff's attorney.
6. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's period of disability, when bills for same have been submitted and approved by the Industrial Commission, subject to the limitations period of N.C. Gen. Stat. § 97-25.1.
7. Defendant shall reimburse plaintiff all monies paid out of pocket by plaintiff to the date of this award for treatment for his compensable left ankle injury.
8. Plaintiff's counsel shall submit an affidavit or itemized statement in support of an award of reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88 within ten (10) days of the filing of this Opinion and Award for the time expended preparing and litigating this appeal. Upon receipt of the affidavit, the Full Commission shall issue an order directing defendant to pay an additional attorney's fee directly to plaintiff's counsel.
9. Defendant shall pay the costs.
This the 22nd day of February, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING: *Page 13 
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1